**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Sean P. Doyle, United States Postal Inspector, being duly sworn, depose and state as follows:

### I.     INTRODUCTION

1. I have been employed as a Postal Inspector by the United States Postal Inspection Service ("USPIS") since July 2016.  I was assigned to the USPIS Connecticut and Western Massachusetts Major Crimes Team from 2016 through August of 2019.  In August of 2019, I transferred to the USPIS Manchester, NH Prohibited Mail Narcotics/ Miscellaneous Crime Team.  On these teams, my duties and responsibilities include, but are not limited to, the investigation of the illegal shipment of narcotics and narcotics proceeds, as well as the laundering of drug proceeds via the United States Postal Service ("USPS").  I have intercepted numerous USPS Priority Mail Express or Priority Mail parcels which were found to have contained controlled substances and/or the proceeds from the sales of controlled substances through the United States Mail.  Prior to becoming a U.S. Postal Inspector, I was employed for ten years as a police officer for the Town of Londonderry, New Hampshire.

2. I have received extensive training in criminal investigations, procedures and criminal law, and I have assisted senior postal inspectors and other law enforcement agents in numerous criminal investigations and in the execution of search warrants.  I have received training from the USPIS in the investigation of controlled substances and proceeds/payments for controlled substances being transported through the United States Mail. I have also received asset forfeiture training and have consulted with senior postal inspectors and asset forfeiture specialists.

3. I am a law enforcement officer of the United States within the meaning of Title 18 U.S.C. § 3061, and am empowered by law to conduct investigations and make arrests for offenses enumerated in Title 21 U.S.C. §841(a)(1), distribution of controlled substances, Title 21 U.S.C. §843(b), use of a communications facility in the commission of narcotics trafficking offenses, Title 21 U.S.C. §846, conspiracy to possess with intent to distribute and distribution of controlled substances and other federal offenses.

4. This affidavit is being made in support of an application for a search warrant for a First Class parcel displaying a First Class Mail epostage label, bearing tracking number                    6168, and addressed to                    LEBANON NH                    (the "Subject Parcel," described further in paragraphs 8 through 10 below).  For the reasons set forth in this affidavit, I submit that probable cause exists to believe that the Subject Parcel contains controlled substances, evidence of the following offenses: distribution of controlled substances, in violation of Title 21 U.S.C. §841(a)(1); use of a communications facility in the commission of narcotics trafficking offenses, in violation of Title 21 U.S.C. §843(b); and conspiracy to possess with intent to distribute and distribution of controlled substances, in violation of Title 21 U.S.C. §846.

5. The information set forth in this affidavit is based on an investigation other law enforcement agents and I are conducting.  This affidavit does not contain every fact known to me with respect to this investigation.  Rather, it contains those facts I believe to be necessary to establish probable cause for issuance of this search warrant.

## II.  GENERAL BACKGROUND CONCERNING THE SHIPMENT OF DRUGS AND DRUG SALE PROCEEDS THROUGH THE UNITED STATES MAILS

6. Based on my training and experience, I know that individuals shipping controlled substances via the United States Mail primarily utilize Priority Mail Express and Priority Mail because of the speed, reliability, free telephone and internet package tracking service, as well as the perceived minimal chance of detection. Mailers often use fictitious names and/or fictitious return addresses to prevent them from being identified and apprehended by law enforcement.

7. Based on my training and experience, I know that narcotics traffickers often send their illegal narcotics through the mail from source states, such as California, Arizona, Texas, Nevada and the U.S. Territory of Puerto Rico.

## III.  DESCRIPTION OF THE SUBJECT PARCEL

8. The Subject Parcel is a First Class parcel displaying a First Class Mail epostage label, bearing tracking number                               6168, addressed to                        LEBANON NH                   and bearing a return address of                                 Houston, TX           (the "Subject Parcel").  The following are images of the Subject Parcel:

 

9. The Subject Parcel measures approximately 9 ¼" x 6," weighs approximately 0 pounds, 8 ounces, and bears $3.49 in postage. The parcel was mailed on January 27, 2020, from Houston, TX

## IV.   INVESTIGATION TO DATE

10. On November 14, 2019, members of the Drug Enforcement Administration ("DEA"), New Hampshire Drug Task Force ("NHDTF") and Lebanon, NH Police served arrest warrants on          Lurvey and          Ferraro related to the sale methamphetamine. Both subjects were believed to be staying at                    LEBANON NH          During the course of the investigation, it was determined Lurvey was staying in apartment 5 and Ferraro was staying in apartment 6.

11. Both Lurvey and Ferraro were located and taken into custody on November 14, 2019. During the search of Lurvey's person incident to arrest, an officer located a small

ziplock style baggie which contained trace amounts of a substance consistent with the properties of methamphetamine.

12. During the arrest of Lurvey, an officer spoke with a female by the name of Sith at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Sith said that APT ▓ belonged to her and her husband, later identified as LIN ZAW.  Sith said that ZAW was at work in ▓▓▓▓▓▓▓▓▓▓▓▓ Vermont, where he worked in computer repair.  The officer asked Sith for her consent to search APT ▓. Sith agreed and consented to the search of APT ▓.

13. The officer searched the residence and located a quantity of marijuana in plain view, as well as a piece of drug manufacturing equipment he recognized as a vacuum chamber kit. The system appeared to be set up to extract the THC content from marijuana. In this same area, the officer also observed packaging materials that based on his training and experience appeared consistent with materials used to package controlled illicit drugs.  Additionally, investigators located what appeared to be THC extractions inside of silicone containers, in a cabinet next to the couch in the living room.

14. While on scene, ZAW arrived and spoke with the officer.  The officer advised ZAW of the arrests and the consent search.  The officer questioned ZAW about the drug manufacturing equipment that was located.  ZAW told the officer that the equipment was his and that he "messes around" extracting THC from marijuana.  The officer also informed ZAW of the THC extracts found in several containers in the cabinet next to his couch, and again ZAW advised the THC extracts were his.

15. Simultaneously, other officers spoke with Ferraro at the Lebanon, NH Police Department.  During the interview, Ferraro admitted that he had been purchasing,

distributing, and using methamphetamine. He estimated that he had approximately five to six customers who purchased methamphetamine from him. Ferraro claimed that the methamphetamine he sold was purchased via the dark web. Ferraro stated he directed his neighbor, "Zaw," to purchase methamphetamine through the dark web. Ferraro stated he had been directing Zaw to purchase his methamphetamine since the middle of the summer of 2019. Ferraro instructed Zaw to order about two to four ounces of methamphetamine per week. The money was held in escrow until Ferraro and Zaw confirmed their deliveries of the methamphetamine. Ferraro said that the methamphetamine was typically delivered via the United States Postal Service, as was customary of dark web methamphetamine retailers.

16. Ferraro told investigators that he paid Zaw $400 cash, per ounce of methamphetamine. Ferraro would typically sell the ounce of methamphetamine for $800. Ferraro said the quality of methamphetamine that they purchased through the internet was average. Ferraro added that a shipment of methamphetamine was due to be delivered around the date of the interview.

17. Investigators relayed the information provided during the interview of Ferraro to the officer who was still at                    speaking with ZAW. ZAW was questioned about purchasing methamphetamine via the dark web and receiving that methamphetamine via the Unites States Postal Service. ZAW admitted to the officer that he had been receiving packages of methamphetamine in the mail. ZAW first stated that he was only getting a few grams at a time in the mail, but then agreed that he may have been getting larger quantities. ZAW also admitted to "giving" the methamphetamine from those packages to Ferraro and Lurvey to "get rid of."

18. While questioning ZAW about the purchase of methamphetamine via the dark web and receiving it through USPS, the officer learned that investigators had located USPS packages in the basement, with opened mylar packaging inside.  The contents of the mylar packaging had been removed.  From my training and experience and in communication with other agents, I recognize this packaging as consistent with narcotics being mailed through the USPS.  ZAW was questioned about the packages and admitted that some of the packages may have contained methamphetamine.

19. Inspectors began monitoring mail going to the                     address.  On or about Friday, November 29, 2019, Postal Inspectors in New Hampshire identified USPS Priority Mail parcel bearing label                          75 84, mailed on November 27, 2019, from Buena Park, CA        as a parcel possibly containing a controlled substance.  The parcel bore a USPS Easypost Priority Mail epostage label with the following typed addressee information:

    LEBANON NH              and a return address of

                    BUENA PARK CA              The parcel weighed
    approximately 0 pounds, 4.625 ounces and bore $5.86 in U.S. postage.

20. On December 5, 2019, Inspectors applied for and were granted a search and seizure warrant for the parcel by this court.  On December 6, 2019, agents searched the parcel and located a white crystalline substance which field tested presumptively positive for methamphetamine.  The DEA laboratory later confirmed the substance to be 55.1 grams of methamphetamine with 98% purity [53.9 grams meth (actual) +/- 3.3 grams].

21. In January of 2020, ZAW was charged via grand jury indictment with violations of 21 U.S.C. §§ 841(a)(1) & 846 – Attempted Possession of Methamphetamine (50g+ actual) with Intent to Distribute.

22. On or about Thursday, January 23, 2020, Postal Inspectors in New Hampshire identified the Subject Parcel as another parcel being sent to ZAW that possibly contained a controlled substance.

23. On January 28, 2020, investigators with the U.S. Postal Inspection Service, USPS-OIG, DEA, N.H. State Police, N.H. Drug Task Force and Lebanon, NH Police arrested ZAW at his residence,                         Lebanon, NH        During a post arrest interview, after being read his Miranda rights, ZAW was questioned about the Subject Parcel.  ZAW admitted ownership of the Subject Parcel and advised it contained "Skittles."

## V.    CANINE POSITIVE RESPONSE TO PACKAGE

24. On January 30, 2020, Inspectors contacted a New Hampshire State Police trooper and requested that he and his narcotic-trained K-9 review the Subject Parcel for the scent of controlled substances.  The trooper informed Inspectors that he uses the K-9 in the detection of controlled substances in different situations, including within sealed packages shipped through the United States Mail and other courier services.  The trooper further informed Inspectors that he and the K-9 successfully completed the New England State Police Administrator's Conference canine certification process and that their certification is current.  The certification process involves a comprehensive test designed to measure the ability of the dog and the handler in

searching for and indicating the presence of narcotics. This certification is administered in different environments with a variety of distractions and is designed to duplicate actual field conditions that the canine team might encounter. The Subject Parcel was placed inside a piece of luggage, which was then lined up among three other similar sized pieces of luggage. Upon examination of the luggage, the trooper advised that the K-9 had alerted to the luggage case containing the Subject Parcel.

## VI.   CONCLUSION

25. Based on the facts described above, I believe that there is probable cause to believe that the Subject Parcel described above contains controlled substances or other items relevant to drug trafficking in violation of Title 21, United States Code, Sections 841(a)(1) (possession with intent to distribute and distribution of controlled substances), 843(b) (use of a communication facility in the commission of a controlled substances trafficking offense), and 846 (conspiracy to possess with intent to distribute and distribution of controlled substances).

26. Accordingly, I respectfully request that this Court issue a search warrant authorizing the search of the Subject Parcel for contraband and evidence of violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, including controlled substances, records relating to controlled substance delivery, and/or records relating to the identity of the individual who shipped the package or the intended recipient of the package.

/s/ Sean P. Doyle\
SEAN P. DOYLE\
UNITED STATES POSTAL INSPECTOR

Subscribed and sworn to before me this 11th day of February 2020.

HONORABLE ANDREA K. JOHNSTONE\
UNITED STATES MAGISTRATE JUDGE